IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RUSSELL ALVAR MORRIS,

                    Plaintiff,

vs.                                    Case No. 15-9337-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the
conclusion.   The determination of whether substantial evidence
supports the Commissioner's decision is not simply a
quantitative exercise, for evidence is not substantial if it is
overwhelmed by other evidence or if it really constitutes mere
conclusion.   Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).
Although the court is not to reweigh the evidence, the findings
of the Commissioner will not be mechanically accepted.   Nor will
the findings be affirmed by isolating facts and labeling them
substantial evidence, as the court must scrutinize the entire
record in determining whether the Commissioner's conclusions are
rational.   Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan.
1992).   The court should examine the record as a whole,
including whatever in the record fairly detracts from the weight
of the Commissioner's decision and, on that basis, determine if
the substantiality of the evidence test has been met.   Glenn, 21
F.3d at 984.

     The Social Security Act provides that an individual shall
be determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment
expected to result in death or last for a continuous period of
twelve months which prevents the claimant from engaging in
substantial gainful activity (SGA).   The claimant's physical or
mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On July 31, 2015, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 10-21).  Plaintiff alleges that he has been disabled since November 10, 2012 (R. at 10). Plaintiff is insured for disability insurance benefits through September 30, 2018 (R. at 12).  At step one, the ALJ found that

plaintiff did not engage in substantial gainful activity since
the alleged onset date (R. at 12).  At step two, the ALJ found
that plaintiff had a severe combination of impairments (R. at
12).  At step three, the ALJ determined that plaintiff's
impairments do not meet or equal a listed impairment (R. at 13).
After determining plaintiff's RFC (R. at 15), the ALJ found at
step four that plaintiff is unable to perform any past relevant
work (R. at 19).  At step five, the ALJ found that plaintiff
could perform other jobs that exist in significant numbers in
the national economy (R. at 20-21).  Therefore, the ALJ
concluded that plaintiff was not disabled (R. at 21).

**III.  Did the ALJ err in his consideration of the medical
opinion evidence regarding plaintiff's carpal tunnel syndrome?**

The court would first note that the ALJ, in his decision,
gave "significant" weight to the opinions of a state agency
physician, Dr. Parsons (R. at 17), who examined the record on
March 31, 2014, and offered opinions regarding plaintiff's
physical limitations (R. at 74-76).  The ALJ stated that
although some evidence has been added to the record since the
review by Dr. Parsons, that evidence is cumulative of what was
already present in the case record.  That is, the additional
evidence does not document an appreciable worsening of
plaintiff's condition since the opinion by Dr. Parsons (R. at
17).  Dr. Parsons did not discuss carpal tunnel syndrome;

evidence of the presence of this impairment came after the assessment by Dr. Parsons.

As noted by the ALJ, subsequent to the opinion offered by Dr. Parsons, medical testing on July 9, 2014 showed evidence of carpal tunnel syndrome bilaterally, severe on the left and mild on the right side (R. at 13, 569). On May 30, 2015, Dr. Pakseresht performed a consultative medical examination on the plaintiff (R. at 795-806). Dr. Pakseresht stated that positive Tinel and Phalen with EMGs confirm carpal tunnel syndrome, but that grip and dexterity is preserved (R. at 798). Plaintiff was found to have 90 pounds of grip strength in the right hand and 60 pounds of grip strength in the left hand (R. at 797). Based on his examination, Dr. Pakseresht opined that plaintiff, who is right hand dominant, could continuously use his right hand for reaching, handling, fingering feeling and to push/pull, but could only use his left hand frequently to perform those same activities. He based this opinion on the history of carpal tunnel syndrome confirmed by EMG (R. at 803).

The ALJ gave only moderate weight to the opinions of Dr. Pakseresht. The ALJ noted that he only examined plaintiff, and did not have a treating relationship with the plaintiff. The ALJ further noted that he only reviewed part of plaintiff's medical record. The ALJ stated that Dr. Pakseresht did not identify any significant deficits involving plaintiff's left

hand that would support a finding that he can only frequently
use it; the ALJ indicated that there were no disparate findings
as between the plaintiff's left and right hand that would
support a finding that he can only frequently use his left hand
but continuously use his right hand (R. at 18).

The opinion of an examining physician is generally entitled
to less weight than that of a treating physician, and the
opinion of an agency physician who has never seen the claimant
is entitled to the least weight of all.  Robinson v. Barnhart,
366 F.3d 1078, 1084 (10th Cir. 2004).  The issue before the court
is whether substantial evidence supports the discounting of the
opinions of Dr. Pakseresht regarding plaintiff's carpal tunnel
syndrome.

The ALJ himself noted that the testing that yielded
evidence of carpal tunnel syndrome came after the assessment by
Dr. Parsons (R. at 13).  The EMG testing on July 9, 2014 showed
evidence of carpal tunnel syndrome bilaterally, severe on the
left and mild on the right side (R. at 569).  The medical
records indicate that plaintiff reported on September 24, 2014
no strength deficits, and it is more of the numbness/tingling
that continues to present problems intermittently, but which had
minimized significantly (R. at 702).  VA medical records from
December 15, 2014 indicate that plaintiff's hands go numb so
that he cannot grasp onto things.  The medical record from that

date also indicates that this impacts his ability to work (R. at 622, 629).  In 2015, Dr. Pakseresht found positive Tinel and Phalen tests with EMGs confirming carpal tunnel syndrome, although grip and dexterity were preserved (R. at 798).  Dr. Pakseresht found that plaintiff could only use his left hand frequently (1/3 to 2/3 of the time) to reach, handle, finger feel and push/pull; Dr. Pakseresht stated that the history of carpal tunnel syndrome confirmed by EMG were the particular medical or clinical findings which supported his assessment of plaintiff's limitations in the use of his left hand (R. at 803).

In light of the subsequent evidence of carpal tunnel syndrome, the ALJ's statement that evidence added to the record since the assessment by Dr. Parsons is cumulative of what was already present in the case record is clearly erroneous. Evidence, confirmed by testing, of "severe" carpal tunnel syndrome on the left upper extremity clearly documents an appreciable worsening of plaintiff's condition since the assessment by Dr. Parsons, who did not discuss carpal tunnel syndrome.

The ALJ stated that Dr. Pakseresht did not identify any significant deficits involving the left hand that would support a finding that he can only frequently use it (R. at 18). However, the report of Dr. Pakseresht is the only medical opinion evidence that considered plaintiff's carpal tunnel

syndrome and offered specific opinions regarding its impact on plaintiff's ability to work.  Dr. Pakseresht, after an examination of the plaintiff and a review of the testing (EMG, positive Phalen and Tinel findings), stated that the medical and/or clinical findings supported his opinion that plaintiff could only reach, handle, finger, feel and push/pull frequently (1/3 to 2/3 of the time) with his left hand.[1]  The ALJ failed to provide any evidentiary or medical basis for his conclusion that plaintiff had no limitations in the use of his left hand due to carpal tunnel syndrome, or that Dr. Pakseresht should have been able to identify "significant deficits" (other than the positive test results noted above) that would support a finding that plaintiff can only frequently use his left hand.

An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculations, or lay opinions.  McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).[2]  The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers and other medical sources.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  An ALJ's broad assertion that the medical evidence identifies no clinical signs typically

---

[1] As noted above, the VA medical records noted plaintiff's statement that his hands go numb so that he cannot grasp onto things; the medical records indicate that this impacts his ability to work (R. at 629).

[2] There is no reason this principle should not apply to the opinions of an examining medical source.

associated with musculoskeletal pain, such as muscle atrophy, deformity, loss of motion, or neurological deficits was found to be an improper justification for disregarding an opinion of a treating source.  The ALJ is not a medical expert on identifying the clinical signs typically associated with chronic musculoskeletal pain.  An ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).

The ALJ in this case made the very same error as the court found in Bolan.  The ALJ is not a medical expert on identifying clinical signs typically associated with carpal tunnel syndrome. The ALJ cannot sua sponte render a medical judgment without some type of support for this determination.  On the facts of this case, the court finds that the ALJ overstepped his bounds into the province of medicine.  Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996).

The ALJ did not cite to any medical opinion in support of his finding that plaintiff had no limitations in the use of his left hand.  However, an exact correspondence between a medical opinion and the RFC is not required.  In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely

on all of the record evidence, including but not limited to
medical opinions in the file.  That said, in cases in which the
medical opinions appear to conflict with the ALJ's decision
regarding the extent of a plaintiff's impairment(s) to the point
of posing a serious challenge to the ALJ's RFC assessment, it
may be inappropriate for the ALJ to reach an RFC determination
without expert medical assistance.  <u>Wells v. Colvin</u>, 727 F.3d
1061, 1071-1072 (10th Cir. 2013) (in <u>Wells</u>, the ALJ rejected 3
medical opinions, finding that they were inconsistent with the
other evidence in the file; the court directed the ALJ, on
remand, to carefully reconsider whether to adopt the
restrictions on plaintiff's RFC detailed in the medical
opinions, or determine whether further medical evidence is
needed on this issue).

        The court finds, on the facts of this case, that the
medical opinions of Dr. Pakseresht and the VA medical records
clearly conflict with the ALJ's decision to the point of posing
a serious challenge to the ALJ's RFC assessment.  An ALJ may
reject a treating or examining physician's opinion outright only
on the basis of contradictory medical evidence.  The ALJ cannot
substitute his own medical opinion for that of Dr. Pakseresht
and conclude that the medical or clinical signs do not support
functional limitations.  The ALJ offered no evidentiary support
for his determination that the medical or clinical signs do not

support functional limitations in the use of plaintiff's left hand.

The court therefore finds that substantial evidence does not support the ALJ's RFC findings.  This case shall be remanded in order for the ALJ to give further consideration to the opinions of Dr. Pakseresht and VA medical records regarding limitations in the use of plaintiff's left hand.  The ALJ should also ascertain whether additional medical evidence should be obtained on this issue.  See Keith v. Colvin, Case No. 15-1091-SAC (D. Kan. April 29, 2016; Doc. 15)(facts similar to this case).

## IV.  Other issues raised by plaintiff

Plaintiff also contends that the ALJ erred in his consideration of other opinions by Dr. Pakseresht (regarding limitations in plaintiff's ability to sit and stand/walk), in the consideration of the medical findings of the VA, and in the credibility findings of plaintiff and other lay witnesses.  In regards to plaintiff's mental limitations, the court finds no clear error in the ALJ's analysis of the evidence or in his mental RFC findings.  The court also finds no clear error by the ALJ in his analysis of the evidence or in his exertional RFC findings.  The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287

F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court
will not reweigh the evidence, the conclusions reached by the
ALJ must be reasonable and consistent with the evidence.  See
Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court
must affirm if, considering the evidence as a whole, there is
sufficient evidence which a reasonable mind might accept as
adequate to support a conclusion).  The court can only review
the sufficiency of the evidence.  Although the evidence may
support a contrary finding, the court cannot displace the
agency's choice between two fairly conflicting views, even
though the court may have justifiably made a different choice
had the matter been before it de novo.  Oldham v. Astrue, 509
F.3d 1254, 1257-1258 (10th Cir. 2007).

     Although the court does not find any clear error by the ALJ
in his credibility findings, this issue will not be addressed in
detail because it may be affected by the ALJ's resolution of the
case on remand after the ALJ gives proper consideration to the
opinions of Dr. Pakseresht regarding limitations due to
plaintiff's carpal tunnel syndrome and any other evidence on
this issue.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th
Cir. 2004).

     The court will briefly discuss the finding of the VA that
plaintiff had a disability because of carpal tunnel syndrome (R.
at 195-199).  Although another agency's determination of

disability is not binding on the Social Security Administration, it is evidence that the ALJ must consider and explain why he did not find it persuasive.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005); Baca v. Dept. of Health and Human Services, 5 F.3d 476, 480 (10th Cir. 1993).  The ALJ did consider the VA disability ratings, but gave them little weight (R. at 18). When this case is remanded, the ALJ must consider the VA medical records and findings regarding plaintiff's carpal tunnel syndrome in light of all the evidence, including the opinions of Dr. Pakseresht, and any other medical evidence that may be obtained on remand, regarding limitations due to carpal tunnel syndrome.

    This case is being remanded because substantial evidence does not support the ALJ's RFC findings in light of the subsequent medical evidence of limitations due to plaintiff's carpal tunnel syndrome.  The court is expressing no opinion regarding whether plaintiff is in fact disabled.  On remand, the ALJ will need to reexamine the medical and other evidence regarding plaintiff's carpal tunnel syndrome, and, if necessary, obtain additional evidence in order to determine what limitations, if any, are caused by the carpal tunnel syndrome. The ALJ will then need to make RFC findings (which include any limitations due to carpal tunnel syndrome, if such limitations are warranted by the evidence) and then determine if plaintiff

can perform either past relevant work or other work in the national economy.[3]

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 14th day of December 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

[3] The court did not consider whether plaintiff could perform the jobs identified by the VE and the ALJ if plaintiff was limited to only frequent use of the left hand for the various activities set forth in the report from Dr. Pakseresht. This issue was not raised or discussed by the parties, and the court is reluctant to raise an issue sua sponte. Furthermore, the court would also note that the vocational expert (VE) was asked about the impact if plaintiff were limited to occasional use of one upper extremity and frequent use of the other one.  Although this did not match the opinion of Dr. Pakseresht that plaintiff could continuously use his right hand and frequently use his left hand, the VE answered that "it would be difficult to do bilateral hand movement manipulation, gross manipulation of all if you had limited use of one arm" (R. at 53).  Given the opinion of Dr. Pakseresht that plaintiff could only use his right hand frequently (1/3 to 2/3 of the time), the statement of the VE that it would be difficult to do bilateral hand movement manipulation if you had limited use of one arm raises a legitimate question of whether plaintiff could perform other work in the national economy with the limitation set forth by Dr. Pakseresht.  There was no evidence in the record that a person with the limitations found by the ALJ and who is also limited to frequent use of the left hand could perform other work in the national economy.